UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTEN B., | ) |
| Plaintiff, | ) No. 22-cv-6304 |
| v. | ) Magistrate Judge Beth W. Jantz |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[1] | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kristen B.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits. The parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment (Dkt. 13) is DENIED, and the Commissioner's motion for summary judgment (Dkt. 16) is GRANTED. The decision of the Commissioner is affirmed.

**I.   Background**

Plaintiff filed for disability insurance benefits on August 20, 2020, alleging a disability onset date of December 28, 2018. (Administrative Record ("R.") 14.) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 24, 2022. (*Id.*) On March 9, 2022, ALJ Michael Hellman issued an unfavorable decision finding that Plaintiff was not disabled as defined in the Social Security Act. (R. 14-32.) The Appeals Council denied Plaintiff's request

---

[1] On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted for his predecessor, Kilolo Kijakazi, as the proper defendant for this action.
[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

for review on September 15, 2022 (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g); *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. §416.920. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 28, 2018. (R. 16.) At Step Two, the ALJ found Plaintiff had the severe impairments of history of fibromyalgia, sinus headaches, depressive disorder, and anxiety disorder.[3] (R. 16.) At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 19.) Before Step Four, the ALJ found Plaintiff had the RFC to perform less than the full range of work at all exertional levels with the following limitations: she has to avoid concentrated use of hazardous machinery and avoid concentrated exposure to unprotected heights; she can concentrate sufficiently to carry out two or three step tasks in an environment where she can maintain occasional interaction with others, make only occasional simple work-related decisions and adjust to occasional changes in the work setting. (R. 21-22.) At Step Four, the ALJ determined Plaintiff was unable to perform any of her past relevant work. (R. 31.) At Step Five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff can perform, given her age, education, work experience, and residual functional capacity. (*Id*.) In light of these findings, the ALJ found that Plaintiff was not disabled under the Social Security Act. (R. 32.)

II. **Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date

---

[3] The ALJ also found that Plaintiff has several non-severe impairments, none of which are at issue here.

last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

**III.   Discussion**

Plaintiff raises three issues that she contends require remand: 1) the ALJ "improperly undermined Plaintiff's fibromyalgia symptoms, particularly her widespread pain and chronic fatigue, and failed to account for their limiting effects in the RFC assessment;" 2) the ALJ "failed to account for all of Plaintiff's non-exertional limitations arising out of *all* her impairments, in the RFC assessment;" and 3) the ALJ "failed to support his rejection of all treating source opinions." (Dkt. 13 at 6-7)   As discussed below, the Court rejects these arguments and finds that the ALJ adequately supported his opinion.

   **A.     The ALJ's Treatment of Plaintiff's Fibromyalgia Symptoms is Supported by Substantial Evidence.**

Plaintiff's argument in this section is slightly difficult to follow because it jumps between Step 3 and the RFC analysis. However, Plaintiff appears to raise two primary contentions in the first section of her brief: 1) the ALJ failed to credit the portions of the medical record demonstrating Plaintiff suffered from chronic pain and fatigue, and focused too heavily on the

3

reports where Plaintiff did not report any pain; and 2) the ALJ did not properly evaluate Plaintiff's fibromyalgia symptoms. (Dkt. 13 at 8-9).

The ALJ did not fail to consider Plaintiff's reports of pain, as Plaintiff asserts. The ALJ noted that Plaintiff had pain and spasm in her shoulders and spine as well as "tenderness in the elbow, wrists, hips and knees, ankles, arms, legs, feel, and hands" during a December 2018 appointment with Dr. Muhammad Ansari, her primary care physician. (R. 23.) The ALJ also mentioned that Dr. Ansari made identical findings at a visit on June 3, 2019. (R. 24.) The ALJ also noted that Plaintiff reported pain, tenderness, and spasm to Dr. Ansari in January 2020 and again on June 22, 2020. (*Id.*) The ALJ noted several other occasions on which Plaintiff reported pain to Dr. Ansari, including on January 4, 2021, April 29, 2021, and in July 2021. (R. 24-25.) Additionally, the ALJ discussed Plaintiff's testimony regarding the nature and effects of her fibromyalgia pain, including that her "bad" pain days might require her to lie down for most of the day, on half of the days in a month. (R. 22.) However, the ALJ also noted that there were several instances when Plaintiff reported zero pain on a scale from one to ten. (R. 24-25.) This does not demonstrate that the ALJ cherry-picked evidence, as Plaintiff suggests, (Dkt. 13 at 9), but instead an ALJ adequately weighing and considering different lines of evidence.

Ultimately, the ALJ determined that the evidence supported a finding that Plaintiff was not as debilitated by her pain symptoms as she claimed, and based that finding on the times that Plaintiff's pain was under control, her statements that it could be adequately managed by her treatment, and her ability to engage in substantial activities of daily living. (R. 23-25.) In short, the ALJ's decision is based on substantial evidence. Even if it may not be the decision the Court would reach, it is not this Court's job to re-weigh evidence or make calls about credibility. The standard of review for District Courts was recently reiterated in two Seventh Circuit cases, where the appellate court wrote that, "[t]ime and time again, we have emphasized that social-security

adjudicators are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024); *see also Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024) ("It is not enough to criticize the ALJ's decision about her functional capacity to work. She must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record"). Because the ALJ's decision was supported by substantial evidence, the Court will not remand on this basis.

Nor did the ALJ reveal, as Plaintiff argues, "a regrettable misunderstanding of fibromyalgia, Social Security disability rules and regulations, and Seventh Circuit law" because "the Seventh Circuit has repeatedly cautioned that the extent of fibromyalgia pain cannot be measured with objective tests aside from trigger point assessment." (Dkt. 13 at 9-10 (citing *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018)).) Plaintiff argues that the ALJ failed to consider that patients with fibromyalgia will have good days and bad days, and that considering Plaintiff's ability to engage in household chores and other activities of daily living was improper. In *Gerstner,* the Seventh Circuit overturned an ALJ's decision where "[t]he ALJ . . . overstated test results and treatment recommendations and drew unjustified inferences from [plaintiff's] medication gap and job search," which are not issues in this case. 879 F.3d 257. However, *Gerstner* does not stand for the proposition that an ALJ must accept the Plaintiff's subjective complaints of pain where there is contrary evidence in the record. In fact, the Social Security Ruling dealing with fibromyalgia states: "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities; medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p, 2012 WL 3104869, at *5. In other words, since fibromyalgia

5

is difficult to test objectively, the ALJ must rely on other evidence in the record to determine the effect the condition has on the claimant. The ALJ did so here, establishing which portions of the record support his finding that the Plaintiff's fibromyalgia – while a severe impairment – was not disabling.

The ALJ's opinion also exhibits an understanding that fibromyalgia symptoms may vary and people who suffer from the condition have good days and bad days, as evidenced by the aforementioned discussion of Plaintiff's reported pain at some visits and no pain at others. Moreover, the ALJ appropriately relied on Plaintiff's activities of daily living to determine that Plaintiff's pain was not as severe as claimed. (R. 23.) Other Courts in this District have upheld an ALJ's opinion in similar circumstances, where a claimant's complaints of fibromyalgia pain were discounted due to other evidence in the record that indicated that the symptoms may not have been as severe as claimed. *See, e.g., Ellen B. v. Saul*, No. 19 CV 2389, 2020 WL 1912228, at *6 (N.D. Ill. Apr. 20, 2020); *see also Kevin J. B. v. Kijakazi*, No. 21 C 6781, 2023 WL 3727918, at *5 (N.D. Ill. May 30, 2023) ("The ALJ appropriately considered [claimant's] activities of daily living in assessing his symptoms, and he explicitly acknowledged that those activities did not equate to an ability to perform full-time work").

In short, the ALJ's opinion does not fail to adequately account for the nature of fibromyalgia, and the ALJ sufficiently supported his decision with substantial evidence from the record. The Court will not remand on this basis.

**B.     The ALJ's Non-Exertional Limitations Were Supported by Substantial Evidence.**

Although Plaintiff's argument in this section is slightly scattershot, the Court will try to address the arguments raised in the brief. First, Plaintiff argues that the ALJ failed to connect the finding that Plaintiff has moderate limitations in the areas of concentrating, persisting, or

maintaining pace with the RFC limitation that "she can concentrate sufficiently to carry out two or three step tasks in an environment where she can maintain occasional interaction with others, make only occasional simple work-related decisions and adjust to occasional changes in the work setting." (Dkt. 13 at 11 (citing R. 21).) Plaintiff argues that the ALJ failed to build a logical bridge between these two findings, and "failed to consider how Plaintiff's mental impairments, combined with multiple severe physical impairments, including fibromyalgia, headaches, and an autoimmune liver disease that result in fatigue and widespread, chronic pain, impact her ability to remain on task sufficiently to sustain non-exertional work-related activities, five days per week, eight hours per day." (Dkt. 13 at 12.) The Court disagrees. As noted above, the ALJ did consider Plaintiff's allegations of pain but found that they were not supported by the record as a whole; instead, the ALJ found that Plaintiff's conditions were not as disabling as she alleged, and she had the residual functional capacity to work with the above-referenced limitations. As this Court has already noted, that finding is backed up by substantial evidence in the record. Regarding the other conditions in Plaintiff's quote above, the Court agrees with Defendant's characterization of this argument as "unclear," and the Court is uncertain how precisely Plaintiff is claiming that the ALJ failed to consider Plaintiff's combination of impairments.[4] [Dkt. 17 at 9.] The Court further concurs with Defendant that the ALJ's opinion specifically noted that he was considering all of Plaintiff's impairments and that his discussion of the medical evidence for each specific ailment, including her headaches, mental impairments, and liver disease, demonstrates that the ALJ considered all of these issues in determining Plaintiff's RFC. [*See* Dkt. 17 at 9; R. 22-26.] What Plaintiff seeks is for the Court to re-weigh the evidence in her favor, which is not this Court's role

---

[4] This underdeveloped argument could be deemed waived, but the Court addresses it here out of an abundance of caution. (*See* Dkt. 17 at 9 (citing *Heather M. Berryhill*, 384 F. Supp. 3d 928, 934 (N.D. Ill. Jun 5. 2019))).

7

in reviewing the ALJ's opinion. The ALJ did not fail to consider Plaintiff's symptoms, as demonstrated by the lengthy and thorough recitation of the medical record over a 19-page opinion; the Plaintiff just wishes that the ALJ considered her symptoms in a different way. Even if the Court might reach a different opinion, it cannot overturn the ALJ's different decision, provided that the ALJ's conclusions are supported by substantial evidence, as they are in this case. *See Warnell*, 97 F.4th at 1053; *Barnett*, 381 F.3d at 668.

Next, Plaintiff argues that it was improper for the ALJ to rely on normal "mini-mental status" examinations and Plaintiff's lack of prescription medication for her psychological impairments to determine her non-exertional limitations. (Dkt. 13 at 12-13.) As an initial matter, the Court notes that it is permissible for an ALJ to consider normal mental status reports in crafting the RFC. *See Elizabeth G. v. Kijakazi,* No. 20 C 1799, 2022 WL 326966, at *1 (N.D. Ill. Feb. 3, 2022). And crucially here, the ALJ relied on more than the "mini-mental status" examinations; the ALJ's opinion included consideration of the treatment records from Plaintiff's treating therapist (R. 25-26) and the opinions of two state agency psychological consultants. (R. 26, 28.) *See Maria M. v. Kijakazi*, No. 21-cv-1522, 2023 WL 6276524, at *4 (N.D. Ill. Sept. 26, 2023) (ALJ "did not overly rely on normal mental status exam findings," where ALJ considered "an array of other evidence" in the record). Therefore, the Court finds that the ALJ did not commit error by citing the normal mental status examinations in support of his opinion that Plaintiff is not disabled.

As for the prescription medication issue, the lack of medicine may be taken into account provided that the ALJ considers "possible reasons [a claimant] may not . . . seek treatment consistent with the degree of his or her complaints." SSR 16-3p. Here, the specific explanation highlighted by Plaintiff – *i.e.,* "her medication options have been limited because of her autoimmune disease and possible damage to her liver" (Dkt. 13 at 13) – was specifically considered by ALJ, who noted that Plaintiff "testified to no longer taking any mental health medications for

8

many years now because they affect her liver." (R. 22.) As such, the Court rejects this argument as well.

Finally, Plaintiff contends that "[e]ven if an ALJ finds that a plaintiff has moderate limitation in maintaining concentration, persistence, or pace, in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work (as he essentially did here) is not sufficient to account for moderate such difficulties." (Dkt. 13 at 13.) This argument is common in this District, but the Seventh Circuit has noted that "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)). "Instead, the factually specific question to be answered in each case is whether the ALJ has adequately explained, with support from the medical record, how a restriction to simple, routine, and repetitive tasks addresses the claimant's specific concentration, persistence, or pace limitations." *Janette B. v. Kijakazi*, No. 20 C 5673, 2023 WL 184234, at *8 (N.D. Ill. Jan. 13, 2023). Here, the ALJ specifically relied on the opinions of state agency consultants, who found that Plaintiff's moderate limitations in concentration, persistence, and maintaining pace would nonetheless specifically allow her "to meet the basic mental demands of competitive, remunerative, two to three step tasks on a sustained basis, in settings of low social contact, including the abilities to understand, carry out, and remember instructions." (R. 28.) The ALJ used this opinion to support his finding that Plaintiff's RFC could include a limitation to two to three step tasks despite her moderate limitations in concentration, persistence, and maintaining pace. This is sufficient to meet the substantial evidence standard of review, and the Court will not remand on this basis either.

9

### C. The ALJ Properly Evaluated Medical Opinion Evidence.

Plaintiff takes issue with the ALJ's discussion of the opinions of Plaintiff's primary care physician, Dr. Ansari, and treating therapist, Ms. Michelle Briones. The Court finds that the ALJ's analysis of those medical opinions was satisfactory and will not remand on that basis.

For claims filed after March 27, 2017, the old "treating physician rule"[5] has been replaced by 20 C.F.R. § 404.1520c. Treating physicians' opinions are no longer entitled to presumptive controlling weight; the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. §404.1520c(b)(1). Consistency and supportability "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. §404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.*

Dr. Ansari's opinion painted a dire picture of Plaintiff's condition, finding, *inter alia*, that Plaintiff would need to lie down for up to an hour at a time at work, could only sit for 45 minutes

---

[5] 20 C.F.R. §404.1527.

10

at a time, could stand for 45 minutes and walk for 30 minutes, would be off task more than 30 percent of the time, and be absent for more than five days per month. (R. 640-643, 669.) In finding Dr. Ansari's opinion "minimally persuasive," the ALJ wrote:

> The answers are not well supported because Dr. Ansari's examinations of her show no consistently objective findings that would give rise or support mobility or other exertional deficits. His other answers are not well supported by his findings either. At most, it is claimant's subjective reports alone that appear to impress the doctor in his assessment. Moreover, on numerous occasions, the claimant did not even report any intensity of pain to him. Dr. Ansari's assessment is not consistent with the assessments of the State agency medical consultants who not only had Dr. Ansari's reports to consider but those of the digestive health providers' and of Dr. Campobasso (of Diamond Therapy Center).

(R. 27.)

As shown by that quotation, the ALJ considered the requisite factors (*i.e.*, supportability and consistency) and cited evidence for why the ALJ did not believe that Dr. Ansari's opinion met those factors. While the Plaintiff may disagree with those conclusions, the Court's role is only to determine if they are based on substantial evidence, and the Court believes they are.

The same is true for the opinion of Ms. Briones, who found that Plaintiff had marked restrictions in daily activities, socialization, and sustaining concentration, and that Plaintiff's symptoms were triggered by feeling disrespected by others and stress. (R. 644-645.) The ALJ agreed that stressful situations exacerbated Plaintiff's symptoms, but otherwise did not find persuasive value in Ms. Briones's opinion, writing:

> Ms. Briones' (sic) impression that claimant is "markedly" limited or restricted in areas is not well supported, especially for the reasons she gave. These aspects of Ms. Briones' assessment as well as impression that claimant cannot function in an eight-hour workday are not well supported by her cryptic notations and that there is no indication that the claimant has been having such level of functioning with other people or persisting on task according to even Dr. Ansari's observations or those of the consultative examiner, Dr. Knopf.

11

(R. 29.)

Again, this satisfies the requirements of the social security regulations. The ALJ found that Ms. Briones's opinion was not supported by her own notes. While the Court takes some issue with the description of the notes as "cryptic," the ALJ did discuss the substance of Ms. Briones's notes elsewhere in the opinion and accurately described the findings therein. (R. 25-26.) The ALJ also determined that Ms. Briones's opinion was not consistent with the record, finding that the observations of Dr. Ansari and consultative examiner, Dr. Knopf, did not demonstrate that Plaintiff had marked limitations in socializing or maintaining concentration. (R. 29.) The ALJ's opinion also thoroughly covered the findings from Dr. Ansari and Dr. Knopf, and they support the ALJ's conclusion that Dr. Briones's opinion is not consistent with the record. Because the ALJ adequately discussed the required factors by supporting his findings with substantial evidence, the Court finds that the ALJ properly analyzed the medical opinions evidence and will not remand on that basis.[6]

## IV. Conclusion

As detailed above, Plaintiff's motion for summary judgment (Dkt. 13) is DENIED, and Defendant's motion for summary judgment (Dkt. 16) is GRANTED. The decision of the Commissioner is affirmed.

---

[6] Similarly, the Court rejects Plaintiff's argument that the ALJ erred by "gratuitously, and without any explanation or support, reject[ing] the statements of Plaintiff's mother corroborating her claims." (Dkt. 13 at 11.) Although opinions and information from non-medical sources may be considered by the ALJ, the ALJ is "not required to articulate how [the ALJ] considered evidence from nonmedical sources using the requirements" for medical opinions. 20 C.F.R. §404.1520c(d). The ALJ did consider Plaintiff's mother's report, but found that the medical findings and record as a whole did not support Plaintiff's mother's report. (R. 29.)

12

ENTER:

Dated: 6/27/24

_____
BETH W. JANTZ
United States Magistrate Judge

13